AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

| | |
|---|---|
| United States of America<br>v.<br><br>TERRILL A. RICKMON, SR.<br>*Defendant(s)* | )<br>)<br>)  Case No.  18-MJ-6069<br>)<br>)<br>)<br>) |

FILED
AUG - 9 2018
CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  July 29, 2018  in the county of  Peoria  in the
Central District of  Illinois , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 United States Code, Section 922(g) | did knowingly and intentionally possess a firearm, that had previously traveled in interstate commerce, after having been convicted of a felony. |

This criminal complaint is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

s/Kevin D. Brown

*Complainant's signature*

Kevin D. Brown, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

s/Jonathan E. Hawley

Date: 08/09/2018

*Judge's signature*

City and state:  Peoria, Illinois   Jonathan E. Hawley, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT
# IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Kevin Brown, (hereinafter "Your Affiant"), do hereby depose and state the following:

1. Your Affiant is a Special Agent of the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF"). Your Affiant has been a law enforcement officer since April 2009.

2. On Sunday, July 29, 2018, the City of Peoria's ShotSpotter gunshot detection system alerted that two rounds were fired at 4:40:02 from the rear of the residence located at 2203 N. Ellis Street, followed by 3 rounds fired immediately thereafter at 4:40:08 from the front of the residence. ShotSpotter then detected another 2 rounds fired at 4:40:39 from the front of the residence followed by 8 rounds fired immediately thereafter at 4:40:44 from several houses north at 2210 N. Ellis Street

3. Immediately responding to dispatch, an officer in a patrol car approached the area identified in the alert and observed a passenger vehicle traveling northbound from the dead end portion of Ellis Street. The officer, travelling southbound, activated his overhead emergency lights and conducted a traffic stop of the vehicle, identified as a white 1992 Oldsmobile Toronado. RICKMON was seated in the front passenger seat. The occupants of the vehicle, including RICKMON, the driver, and a backseat passenger, were all ordered to put their hands up. The officer heard the occupants shout that persons involved in the shooting were still located southward down the street toward the dead end. The officer observed that RICKMON and the driver

1

lowered their hands and appeared to be reaching around inside the vehicle. The officer also noticed that RICKMON had blood on his forehead above his right eye.

4. RICKMON was ordered to exit the vehicle and blood was observed on the rear of his right leg, just below his buttocks. RICKMON stated that he had been shot and showed the officer a bullet hole in his leg. RICKMON stated that he had been at 2207 N. Ellis for a party and was standing outside when he heard shots and realized that he had been hit. He stated that did not see the shooter. He told the officer that he jumped into the car and asked the driver to take him to the hospital.

5. The driver was interviewed and stated that he and his girlfriend were pulling up to a party on Ellis when they heard between 5 to 9 shots being fired. The driver stated that he told his girlfriend to get into the backseat of the car. The driver stated that RICKMON ran up to his car, indicated that he had just been shot, and asked for a ride to the hospital. RICKMON then entered the vehicle and got into the front passenger seat. The driver stated that he was driving RICKMON to the hospital when they were stopped by the police. The driver advised that he was the owner of the Toronado and provided consent to search the vehicle. A SCCY CPX-1 9mm caliber handgun was located under the passenger seat where RICKMON had been sitting. The gun was loaded with one round of red-tipped ammunition in the chamber and one red-tipped round in the magazine. Dried blood was present on the slide and bottom of the grip. Blood stains were also observed on the front passenger seat and on the exterior passenger side of the vehicle. The driver had valid Illinois Firearm Owner Identification Card privileges but stated that he did not own any guns and was unaware of the

2

presence of the 9mm handgun located under the seat where RICKMON had been sitting.

6. The driver's girlfriend was interviewed and stated that she and the driver had just arrived at the party and were still in the car when she heard gunshots. She stated that she heard 7 shots and then "like 7 back" (return gunfire). She stated that RICKMON knocked on the window, indicated that he had been shot, and told the driver to take him to the hospital. She said that she moved from the front passenger seat to the back seat. The driver then turned the vehicle around and headed northbound on Ellis when police stopped them. The driver's girlfriend stated that she never saw anything in RICKMON's hands. She stated that she was distracted by everything that was going on and by the blood on RICKMON.

7. RICKMON was discharged from the hospital on the same day of the shooting and was transferred to the Peoria Police Department to be interviewed. He was told that he was in custody and was advised of his Miranda rights. RICKMON stated that he understood his rights and agreed to speak with a detective. He stated that he went to a party on Ellis but did not know the address or the name of the resident that lived there. He stated that he was walking up the driveway with one of his friend's when the friend stopped to urinate on the side of the home. He stated that an unknown person appeared from the rear corner of the residence and shot at his friend and then at him. RICKMON stated that he began running toward the street but had trouble due to a gunshot wound from a prior incident. He stated that he was shot in the leg as he was running and he took cover behind a vehicle. RICKMON said that as he hid, he

3

encountered another person who shot at him, causing the graze wound to his forehead. He said that he then fell to the ground and saw multiple vehicles leaving the scene. RICKMON then saw a male getting into a vehicle and asked him for a ride. He stated there was a female in the front passenger seat who then moved to the rear so that RICKMON could get in. RICKMON denied that he had handled the gun in the car. When advised that blood was found on the gun, RICKMON added to his account of the incident by stating that when he first tried to get into the vehicle, there was another unidentified male trying to get into the vehicle as well. He said that he told the male that he had been hit and needed to go to the hospital. According to RICKMON, the male then jumped out the vehicle and fled.

8. The SCCY CPX-1 9mm caliber handgun was not manufactured in the State of Illinois, according to an ATF Interstate Nexus Expert. The firearm will expel a projectile by the action of an explosive as it was designed to do.

9. RICKMON has multiple prior felony convictions, including a conviction for delivery of a controlled substance in 2007 in Peoria County, Illinois (Case No. 06 CF 337), and a conviction for possession with intent to deliver cocaine base (crack) in 2010 in the United States District Court for the Central District of Illinois in 2010 (Case No. 09-10007).

10. On July 6, 2016, RICKMON was released from the Bureau of Prisons in CDIL Case No. 09-10007 and commenced a 72 month term of supervised release. On April 19, 2017, RICKMON's supervised release was revoked and he was sentenced to 24 months' imprisonment for separate incidents involving possession and use of

controlled substances and unlawful possession of a weapon by a felon. RICKMON was released to the Federal Bureau of Prisons (BOP) Residential Reentry Center (RRC) in Peoria on May 22, 2018, with a projected discharge date of September 18, 2018. On July 29, 2018, RICKMON was on a home visit pass for the weekend from the RRC. RICKMON's presence on Ellis Street was a violation of his home pass privileges.

s/Kevin D. Brown

---

Kevin D. Brown, Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn and subscribed to before me this 9th day of August 2018:

s/Jonathan E. Hawley

Jonathan E. Hawley
United States Magistrate Judge
Peoria, Illinois

5