UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-cr-10046 |
| ) | |
| TERRILL A. RICKMON, SR. ) | |
| ) | |
| Defendant. ) | |

## ORDER

Defendant, Terrill A. Rickmon, Sr., filed a Motion (Doc. 20) to Suppress Evidence. The United States filed a Response (Doc. 24), and an evidentiary hearing was held on December 21, 2018. For the reasons set forth below, the Motion is DENIED.

## FACTS

On July 29, 2018, Officer Travis Ellefritz ("Ellefritz") and other Peoria Police Officers were dispatched to the area of 2203 North Ellis Street in Peoria, Illinois. Ellis Street comes to a dead end at two points, separated by the City/County Health Department.

The initial dispatch was in response to alerts from ShotSpotter, a gunshot detection system utilized by the City of Peoria. Ellefritz received the ShotSpotter notice through a screen in his squad car that alerts when shots are fired. He was in a marked squad car. While en route to 2203 North Ellis Street, dispatch advised of another ShotSpotter alert at the same location. Additional information from a 911 call reported several cars leaving the area going northbound on McClure.

1

Ellefritz approached the area in his patrol car from McClure Street turning left from McClure onto North Ellis. His vehicle dash cam was on. As Ellefritz was southbound on North Ellis, he observed the headlights of a vehicle heading northbound from the dead end of Ellis, in front of the area where both ShotSpotter alerts indicated the shots came from. The vehicle had turned right on to Ellis Street before heading north on Ellis. Ellefritz did not see any other cars. Ellefritz turned on his headlights and overhead emergency lights and activated his spot light on the approaching vehicle as well. Ellefritz was the first vehicle on the scene. It took approximately three and one and a half minutes from dispatch to the stop of the vehicle. Ellefritz saw an African American male driver, an African American male front passenger, which turned out to be Defendant Rickmon, and an African American female in the back seat. Ellefritz stopped his patrol car in front of 2222 North Ellis and the approaching vehicle stopped just before passing Ellefritz' patrol car. The approaching vehicle then reversed and began to drive backward away from Ellefritz' patrol car with the driver pointing out the window, back toward the dead end of the street, yelling "they are down there. They are down there." Ellefritz looked toward the dead end of Ellis street and estimated a crowd of approximately 25-30 people near the dead end of the street. Ellefritz ordered the defendant and the driver to keep their hands up until back up arrived. Once back up arrived, Defendant got out of the car and said he had been shot. There was a gunshot wound to Defendant's upper leg. The driver and registered owner of the vehicle gave consent for a search of the car and a loaded black and gray 9 millimeter handgun was found under the front passenger seat.

## ANALYSIS

Defendant asserts that Ellefritz lacked probable cause or reasonable suspicion to justify a stop of the car in which he was a passenger and argues that this purported Fourth Amendment violation must result in suppression of the handgun at trial.

Based on the facts and case law, the Court finds the stop and subsequent search to be proper. Officers may conduct an investigatory stop of a vehicle if articulable facts support a reasonable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1 (1968). The determination of whether an officer had reasonable suspicion is an objective inquiry based on the totality of the circumstances known to the officer at the time of the encounter. *United States v. Hicks*, 531 F.3d 555, 558 (7th Cir. 2008).

The government argues this case is analogous to *United States v. Burgess*, 759 F.3d 708 (7th Cir. 2014). In *Burgess*, the district court found that late on a Sunday night (around 10:45 pm) in October 2011, gunshots were fired in a neighborhood on Chicago's northwest side. 911 callers reported gunshots in the area. Based on these reports, officers were dispatched to two locations. Additional callers reported shots from a black car. Officers stopped a black car heading north about a half mile from one of the identified locations and a mile from the other location. Just over four minutes had passed from the initial dispatch. Burgess was a passenger in the black car. Burgess filed a motion to suppress arguing lack of reasonable suspicion. The district court found that, based on what the officers knew from hearing the dispatches—the car's color, the close proximity to the report of shots fired both in terms of timing and location and the seriousness of the

reported crime—reasonable suspicion justified the stop and denied the motion. *Burgess*, 759 F.3d at 711.

Burgess appealed, arguing that what the officer knew was not enough for reasonable suspicion. In its analysis, the Seventh Circuit first observed the dangerousness of the situation facing the officers and the public. *See United States v. Goodwin*, 449 F.3d 766, 799 (2006). Against that backdrop, the officers had knowledge of a car color and street locations and saw the vehicle within two or three minutes about a mile from where they could reasonably expect the shooter's vehicle to have traveled during the time that had elapsed. The Seventh Circuit held that all told, the circumstances here—the dangerousness of the crime, the short lapse of time between the dispatches and the stop, the stop's proximity to the reported shots, and the car's color—provided ample justification for the stopping the car. The court further stated that in such a situation, it is reasonable for police to act quickly, lest they lose the only opportunity they may have to solve a recent violent crime or to interrupt an advancing one. *Burgess*, 759 F.3d at 711.

Defendant argues that *United States v. Brewer*, 561 F.3d 676, 678 (7th Cir. 2009), is more applicable. However, in *Brewer*, a stop was made by an officer who had no knowledge that shots had been fired from a car matching the defendant's, and without that report the court found that the case was on the line between reasonable suspicion and pure hunch. The stop was still upheld as the vehicle was pulled over and stopped only moments before the officers making the stop learned that the vehicle has been seen at the site of the shooting. *Id*. at 679.

Here, the Court finds that this traffic stop was an objectively reasonable one based on the totality of the circumstances. Ellefritz was responding to a dispatch of numerous shots being fired in a specific area and vehicles leaving the area. Upon his arrival, he was met by the vehicle Defendant was a passenger in leaving that exact area. He activated his emergency lights and initiated a stop of the vehicle. This was within minutes of being dispatched to the shooting. The totality of the circumstances here support reasonable suspicion. The short lapse of time between the dispatch and the stop, the 911 call of vehicles leaving the area, this vehicle being the only one Ellefritz saw in close proximity, less than 300 feet from where the shots were reported to have come from, the vehicle driving away from the area where shots reportedly originated, and upon seeing the patrol car stopping and then reversing slightly and moving away from Ellefritz, and the driver yelling that "they are still down there," support the initial stop of that vehicle, if for no other reason than to inquire if they were witnesses to the shooting or to learn if they had been involved in the shooting. *See United States v. Chapman*, 954 F.2d 1352, 1357 (7th Cir. 1992) (a suspect's initial refusal to stop his truck when officers signaled for him to pull over reinforced the reasonableness of the officer's belief that the driver had committed or was committing a crime). Accordingly, Defendant's Motion to Suppress Evidence is denied.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 20) to Suppress Evidence is DENIED.

Signed on this 27th day of December, 2018.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge
