IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>TERRILL A. RICKMON, SR.,<br>    Defendant. | Case No. 1:18-cr-10046-JEH-1 |

### Order

Now before the Court is the Defendant, Terrill A. Rickmon, Sr.'s, *pro se* motion for early termination of supervised release (D. 77), along with his counsel's amended motion seeking the same relief (D. 82).[1] For the reasons stated, *infra*, the motion is granted.

### I

Back in 2010, Rickmon was sentenced to 120 months' imprisonment for possession with intent to distribute crack cocaine in this Court, which was later reduced to 60 months' imprisonment after remand from the Court of Appeals. He was also sentenced to six years of supervised release at the time.

Things did not go well for Rickmon on this term of supervised release. His supervised release was first revoked on July 6, 2016, after he admitted to violating a condition of supervised release by obstructing a peace officer and resisting arrest on March 29, 2015. He was sentenced to time served and placed on an additional 12 months of supervised release.

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

Subsequently, on July 26, 2016, a petition for revocation was filed due to Rickmon's unlawful possession of a weapon by a felon on July 26, 2016, and his use of controlled substances, specifically cocaine and MDMA, on July 8 and July 19, 2016.  His supervised release was revoked again on April 17, 2017, and he was sentenced to 24 months in custody with no further term of supervised release imposed.

Other allegations of violations during these periods of supervision include driving while his license was revoked, fleeing and eluding police, illegal transportation of alcohol, and failing to follow the instructions of the probation officer.

Then, in 2018, Rickmon picked up a new federal criminal case for possession of a firearm by a felon, for which he was sentenced on May 31, 2019, to 75 months' imprisonment and three years of supervised release. After serving his term of imprisonment, he began his supervised release term on July 30, 2023, and he has been on supervised release this time for over 21 months.

Rickmon's behavior on supervised release now is markedly different than his last term. Since being released, he has consistently complied with the conditions of his release, including never testing positive for drugs, calling in daily for random testing, completing monthly reports, and accommodating random home visits by his supervising officer.  Rickmon has maintained steady employment as a Behavioral Coach at Manual High School since September 2024, where he manages students with anger issues and potential for violence.  On one occasion, he successfully de-escalated a potentially violent situation involving a student with a firearm.

He is certified in Trauma-Informed Care and actively works to improve his community by mentoring at-risk youth through his initiative "Truth Heals."  He also serves as an Aid at the Adult Transitioning Center, assists with community

mental health counseling, and facilitates support groups for survivors of gun violence. His previous roles include working as a Trauma Outreach Specialist and a Violence Interrupter, although the latter position ended due to funding cuts. Rickmon founded "Truth Heals" and is working towards registering it as a non-profit to support adults re-entering society and at-risk youth.

He is also involved in organizing events like a basketball game for at-risk youth and re-entry individuals, which received local media attention. He has developed a strong support network, including spiritual practices and relationships with mentors and friends, which aid in his continued positive development.

Rickmon argues that all of these facts demonstrate his rehabilitation and lack of danger to the public, which warrants the early termination of his supervised release.

The Government disagrees. In opposing early termination, the Government argues that the nature and circumstances of the offense, along with the defendant's history and characteristics, strongly support the continuation of supervised release. According to the Government, the defendant has a history of manipulation and dishonesty, as evidenced by his own admission of being a "con artist" and "major manipulator," and his actions during the underlying offense, where he lied about possessing a firearm. Additionally, while in jail, he attempted to manipulate his girlfriend to avoid sentencing, further demonstrating his manipulative behavior.

Rickmon's past conduct, including posting photos of an alleged confidential informant on social media, also weighs against early termination according to the Government. The inaccuracies in his statements to the Court, such as claiming not to have used prohibited substances while having used alcohol and tampered with a sweat patch, further undermine his credibility. The Government emphasizes

that the defendant's alcohol use and history of lying and manipulation in relation to his criminal activities support the need for continued supervision.

The Government also highlights the rehabilitative and treatment needs that supervised release addresses, such as providing mental health counseling, which the United States Probation Office currently pays for. The deterrent effect of home visits and inspections, which prevent the defendant from possessing firearms or narcotics, is another reason for continued supervision, especially given the threat to community safety posed by illegal firearms. The Government also argues that while the defendant's community work might suggest a reduced need for public protection, his proximity to minors and vulnerable populations increases the potential harm if he re-offends.

## II

### A

As this Court set out in *United States v. Crisp*, ___ F.3d ___; 2025 WL 819126, *3 (C.D. Ill; Mar. 14, 2025), Title 18 of the United States Code, Section 3583(e) governs a Court's early termination of supervised release. Sub-section (1) allows a Court to "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release." 18 U.S.C. § 3583(e)(1). Importantly, beyond the one-year requirement set forth in the text of the statute, attempts by courts to erect other arbitrary time barriers to considering motions for early termination have been rejected. *See United States v. Lowe* 632 F.3d 996, 998-99 (7th Cir. 2011). Once a defendant meets this eligibility requirement, a court must consider § 3553(a) factors to determine if it should exercise its discretion and grant a request for early termination. *Crispi*, at *4-5. A court may, but is not required to, consider § 3553(a)(2)(A) when evaluating an early termination motion, unlike when deciding whether and for how long to impose a prison term at sentencing. *Id.* Finally, a defendant need

4

not have perfect conduct while on supervised release in order to have his supervision terminated early, but his behavior does need to demonstrate that he has been rehabilitated such that he no longer poses a danger to the community more than anyone else. *See id.*

**B**

In the present case, the balance of factors weigh in favor of early termination.

First, in looking at the nature and circumstances of Rickmon's offense and his personal history and characteristics, 18 U.S.C. § 3553)(a)(1), the Government is correct that Rickmon's behavior prior to his most recent stint on supervised release was abysmal. He not only picked up two prior federal convictions, but multiple revocations of his supervised release. And while that behavior is still a relevant consideration, his more recent behavior is the best evidence of whether he is now rehabilitated. Indeed, when you contrast his near perfect behavior for 21 months while on supervised release this time to his multiple revocations last time, it is apparent that the goals of sentencing for his last federal conviction were achieved. Something was different this time upon his release from prison. Rather than refusing to follow the rules and continuing to break the law, Rickmon set himself on a different path. Currently, he is working to improve his community and help those who, like himself, are victims of gun violence. This changed behavior demonstrates that the risk of him again possessing a firearm, and thus presenting that danger to the public, is minimal.

Regarding the need to afford adequate deterrence to criminal conduct, 18 U.S.C. § 3553(a)(2)(B), like the defendant in *Crisp*, supervised release" is not deterring him from returning to a life a crime; clearly, the benefits of living a healthy, stable, crime free life are doing the deterrence here." *Crisp*, at *8. If avoiding violating supervised release was the motivation for his current

5

behavior, he could just follow the rules, rather than perform the community service he is engaged in –something that is not required as a condition of his supervised release.

Regarding general deterrence, as discussed in *Crisp*, giving supervisees a pathway to get out from under the thumb of the federal government by performing well on supervised release can incentivize people to comply with their terms of supervision, thereby deterring them from committing new criminal conduct. *Id.*

Regarding protecting the public from further crimes of the defendant, 18 U.S.C. § 3553(a)(2)(C), this factor weighs in favor of early termination, for, as already discussed, *infra*, Rickmon's conduct while on his current term of supervision demonstrates his rehabilitation, which is precisely what protects the public from future crimes he might otherwise commit.

The last significant factor to weigh in the balance, the need for the supervised release term to "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," 18 U.S.C. §. 3553(a)(2)(D), weighs in favor of termination. The services provided to Rickmon by the Probation Office at this point are minimal, and there is nothing to suggest he cannot obtain the services he may want or need through his own means without being subject to the dictates and lack of confidentiality that services provided through the Probation Office bring with them.

## C

A final word about Rickmon's conduct while on his current term of supervised release, which involved an allegation of using alcohol and tampering with a sweat patch. First, it is significant to note that the Court has never made a finding that Rickmon violated any conditions of supervised release during his

current term of supervision. Indeed, no petition to modify or revoke his conditions based upon an alleged violation has been filed since he was released in July of 2023. Secondly, even those on federal supervision cannot be expected to live the life of a saint. People make mistakes, exercise poor judgment, and screw up now and then. One need look no further than YouTube for evidence of this. What matters is whether the defendant's conduct while on supervision, when viewed through the lens of the § 3553(a) factors, demonstrates that he has been rehabilitated and poses nor more of a danger to the public than anyone else walking the streets.  Even assuming once in the last 21 months Rickmon drank some liquor and fiddled with his sweat patch, nothing about that behavior in any way suggests that his is going to go out and possess a firearm again—the primary danger for which supervised release in this case is directed—or any other crime.

### III

For the reasons stated, *supra*, the motion for early termination of supervised release (D. 77), along with his counsel's amended motion for seeking the same relief (D. 82) are granted. Rickmon's term of supervision is hereby terminated.

*It is so ordered.*

Entered on May 14, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE